647 P.2d 870

Vernon H. WORMAN,
Plaintiff-Appellant,

v.

ECHO RIDGE HOMES COOPERATIVE, INC., a non-profit corporation, Defendant-Appellee.

No. 13,791.

Supreme Court of New Mexico.

July 2, 1982.

John E. Brooks, Albuquerque, for plaintiff-appellant.

Eaves & Darling, William J. Darling, Albuquerque, for defendant-appellee.

Bridget Jacober, Taxation & Revenue Dept., Santa Fe, amicus curiae.

## OPINION

SOSA, Senior Justice.

This is an appeal from the district court's judgment in favor of appellee, Echo Ridge Homes Cooperative, Inc. (Echo Ridge), allowing it to redeem property by payment of delinquent taxes and quieting title in Echo Ridge. The issue is whether the New Mexico Taxation and Revenue Department (Department) committed constructive fraud by failing to notify Echo Ridge of the pending public sale of property owned by Echo Ridge.

In 1966, Echo Ridge purchased a 31½-foot-wide strip of land, part of Lot 4, abutting the western edge of its property from Lusk Corporation which owned Imperial House, an adjacent apartment complex. The remainder of Lot 4 was owned by Imperial House. Thompson Realty Estate Management, Inc. (Thompson Realty), which managed Echo Ridge from 1967 through 1974, failed to assess the property for taxes on behalf of Echo Ridge, although Echo Ridge was the record owner. The taxes on the strip were not paid after 1967.

In 1971, the Bernalillo County Treasurer executed a tax deed conveying the land to the State. Notices of delinquent taxes and of the issuance of the deed to the State were sent by the Department to Lusk Corporation/Boys' Academy Trust in Tucson, Arizona, in 1972 and 1974, respectively, because Lusk Corporation was the last assessed owner. No further notices were sent to Lusk Corporation.

In 1980, Ken Cordova, a title examiner for the Department, randomly selected the file pertaining to this property in an attempt to either collect the delinquent taxes or to prepare it for public auction. Initially, he did not know whether Echo Ridge or Imperial House owned the property. He informed Echo Ridge's manager that taxes were due and owing on Lot 4. The manager told Cordova that Echo Ridge did not owe any taxes and that Lot 4 was owned by Imperial House. Cordova then spoke with Imperial House's manager, Vernon Worman, appellant in this case, who also denied owing any taxes. Upon further investigation, Cordova discovered that Echo Ridge was the record owner of the property.

Certified notice of the issuance of the deed to the State for nonpayment of taxes and of the right to repurchase was sent to Thompson Realty in Tempe, Arizona, which was the "return to" address listed on Echo Ridge's deed. No notice was sent to either Echo Ridge's office in Albuquerque or to its statutory agent in Albuquerque. Cordova also failed to place written notice on the property (a red tag), a procedure recommended by the Department's Procedures Manual (Defendant's Exhibit K). Notices were sent, however, to Imperial House, and Cordova left a red tag with Worman.

The land was sold to Worman at public auction on April 29, 1980. He brought this suit for ejectment and damages against Echo Ridge, which counterclaimed for quiet title, alleging that the tax sale was void because the Department committed fraud. The district court held that the actions of the Department, in failing to notify Echo

Ridge of the tax sale and to red tag the property, amounted to constructive fraud. Worman appeals. We reverse.

Because this case stems from the collection of taxes imposed prior to 1975 and the property was deeded to the State prior to 1975, the applicable tax laws are those contained in the 1953 compilation. *See* 1973 N.M. Laws, ch. 258, § 153, *amended by* 1974 N.M. Laws, ch. 92, § 33(B)(2). *See also Tomson v. County of Dona Ana*, 93 N.M. 173, 598 P.2d 216 (Ct.App.1979). All references to the tax statutes cited herein are found at N.M.S.A. 1953 (Repl.Vol.1961) (repealed 1974, effective January 1, 1975).

A review of the statutes pertaining to the assessment and collection of taxes indicates that the ultimate responsibility for payment of property taxes rests upon the property owner. The owner is required to declare annually all property subject to taxation, § 72–2–3, and if he fails to assess and pay taxes in his own name the county treasurer shall sell the land to the State pursuant to Section 72–8–1. *See Aragon v. Empire Gold Mining & Milling Co.*, 47 N.M. 299, 142 P.2d 539 (1943).

The owner has a right to redeem the property under Section 72–8–9, and the right to repurchase it until the State sells it under Section 72–8–31. Once land is sold by the State, however, the tax deed issued becomes "a new and paramount title in fee simple absolute, striking down all previous titles and interests in the property." *Bailey v. Barranca*, 83 N.M. 90, 92, 488 P.2d 725, 727 (1971). This is to ensure certainty and stability in tax titles, and to promote important social and economic objectives such as raising state revenues and promoting land improvement. *Id.*

Therefore, tax titles may be attacked only upon the limited grounds set forth in Section 72–8–20. Under this curative statute, tax titles may be defeated (1) if the property was not subject to taxation for the years named in the deed to the State, (2) if the taxes had been paid before the sale to the State, (3) if the property had been redeemed from the sale, or (4) if the owner proves that fraud was committed by the officer selling the land.

Echo Ridge challenged Worman's tax deed under the latter ground. It alleged, and the district court agreed, that the Department's failure to send notice to Echo Ridge, and to red tag the strip, amounted to constructive fraud. We disagree.

▮ In general, constructive fraud is a breach of a legal or equitable duty, regardless of the fraud feasor's moral guilt. *Snell v. Cornehl*, 81 N.M. 248, 466 P.2d 94 (1970). The law declares the breach fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. *In re Trigg*, 46 N.M. 96, 121 P.2d 152 (1942). While the word "fraud" in the statute contemplates constructive as well as actual fraud, neither actual dishonesty of purpose nor intent to deceive need be shown. *Scudder v. Hart*, 45 N.M. 76, 110 P.2d 536 (1941). However, constructive fraud must be established by clear and convincing evidence. *Snell v. Cornehl, supra.*

▮ We fail to find clear and convincing evidence of constructive fraud. It is true that the Department has the duty of notifying all persons whose property has been acquired by the State, § 72–8–29, by registered or certified mail to the person and at the address which appears in the tax deed, § 72–8–30. Notice of public sale by publication and by posting in the county treasurer's and assessor's offices is also required. § 72–8–34.

Public notices of the pending tax sale were timely posted by the Department in the Bernalillo County Assessor's office, the Bernalillo County Clerk's office, and the Bernalillo County Treasurer's office. The Department also timely published public notice of the sale on two separate occasions in the *Albuquerque Journal* newspaper.

We find no breaches by the Department of its statutory duties. The fact that the notice was not delivered to the addressee, or was received by a person other than the addressee, will not affect the validity of the sale. § 72–8–30. We have consistently held that failure to give or receive notice of

taxes due or of the expiration of the time allowed for redemption will not invalidate a subsequent sale. *Bailey v. Barranca, supra; Lawson v. McKinney*, 54 N.M. 179, 217 P.2d 258 (1950); *Taylor v. Shaw*, 48 N.M. 395, 151 P.2d 743 (1944). We have also held that failure of the Department to send notice to the owner's last known address will not amount to constructive fraud. *Lamb v. Manley*, 58 N.M. 292, 270 P.2d 706 (1954).

The deeds were not set aside in the above cases despite the fact that notice was neither given nor received. We see no reason to set the deed aside here merely because the Department failed to send notice directly to Echo Ridge. Our conclusion is supported by the following facts: Echo Ridge breached its duty to assess the strip in its own name; Echo Ridge listed Thompson Realty's address on its deed; and Cordova gave personal notice of delinquent taxes to Echo Ridge's manager. We find that the Department substantially complied with the statutory notice requirements. Our holding is in accordance with the purpose of the notice requirements. In *N. H. Ranch Co. v. Gann*, 42 N.M. 530, 82 P.2d 632 (1938), this Court explained that the notice of sale is in the state's interest in that it apprises prospective buyers of the property sale and furthers the collection of state revenues. The Court further stated that "[e]ven if it be considered that notice was also designed to warn the owner, this feature is minimized in view of the fact that the delinquent is bound to know that the taxes on his land have not been paid." *Id.* at 538, 82 P.2d at 637.

Finally, we do not find that the failure of the Department to red tag the property amounts to a breach of an equitable duty. The red tagging procedure is merely part of the Department's Procedures Manual. It has not been adopted or promulgated as an official regulation nor does it have the force of law. Page one of the Manual states:

Due to the inherent nature and peculiarities involved in each tax deed, *no specific procedures can be developed for each case.* However, developed below are some *guidelines* which should prove beneficial to either new employees or to anyone who is interested in gaining an understanding of the type of work administered by this division. [Emphasis added.]

Thus, the procedures contained in the Manual are merely guidelines and not requirements.

We also disagree with Echo Ridge's contention that Cordova was under a duty to correct Echo Ridge's misapprehension as to who owned the strip. Echo Ridge cites no authority for this proposition, nor have we found any. Cordova informed Echo Ridge of the delinquent taxes; we fail to see what more could have been done to convince Echo Ridge that it owned the property. There must be some point at which the landowner is responsible for ascertaining what he does or does not own.

For the above reasons, we hold that the district court erred in setting aside the sale to Worman and quieting title in Echo Ridge on the basis of constructive fraud. We hereby reverse the district court and remand the case for proceedings consistent with this opinion.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE and RIORDAN, JJ., concur.

FEDERICI, J., respectfully dissenting.