**In re NEW ENGLAND CARPET COMPANY, INC., Debtor.**

**Bankruptcy No. 81–138.**

United States Bankruptcy Court,
D. Vermont.

Jan. 28, 1983.

William Wargo, City Atty., Essex Junction, Vt., for City of Winooski.

Joseph C. Palmisano, Barre, Vt., trustee, pro se.

Bertin C. Emmons, Boston, Mass., for New England Merchants Nat. Bank.

Andrew R. Field, Montpelier, Vt., for Vermont Development Credit Corp.

## MEMORANDUM AND ORDER ON THE PETITION OF THE CITY OF WINOOSKI FOR THE DETERMINATION OF TAX LIABILITY

CHARLES J. MARRO, Bankruptcy Judge.

### NATURE OF CASE

The City of Winooski filed a Petition for Determination of Tax Liability on October 7, 1982, for personal property taxes for tax years, 1979, 1980, and 1981. On October 12, 1982, the Trustee filed an Answer to the Petition, admitting all matters alleged except the validity and priority of the Petitioner's tax claim. In substance, the City of Winooski is asserting that its claim for taxes is secured pursuant to their filing a notice of tax lien on August 31, 1982, regardless of the fact that the Petition for Reorganization was filed on June 30, 1981.

On November 15, 1982, a hearing was held on the matter, in which the New England Merchants National Bank and the Vermont Development Credit Corporation opposed the City of Winooski's petition. At the hearing, the City of Winooski submitted the testimony of Raymond Clavelle, Collector of Delinquent Taxes, who set forth the tax delinquencies for not only the personal property taxes, but for the real estate and water rents, as well. After the submission of the testimony and arguments, the case was taken under advisement. The parties subsequently submitted memoranda, as well as, a letter in evidence regarding the dates of assessment, and the dates the tax was last payable without penalty. It is on the basis of the aforementioned that the Court now makes its findings of fact and conclusions of law.

### FINDINGS OF FACT

In the instant petition, the parties have not disputed the relevant facts and dates necessary for the Court to make its determination.

On June 30, 1981, New England Carpet Company, Inc., the Debtor, filed a petition of reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101 et seq. Within the schedules as filed, the Debtor set forth personal property tax liabilities due and owing to the City of Winooski, for the tax periods of 1979, and 1980. These liabilities were enumerated as follows:

1979

| | |
|---|---|
| Personal property tax | $6465.41 |
| Interest to 6/30/81 | 840.50 |
| Penalty | 517.23 |
| Total | $7823.14 |

1980

| | |
|---|---|
| Personal property tax | $22453.44 |
| Interest to 6/30/81 | 1178.80 |
| Penalty | 1796.28 |
| Total | $25428.52 |

On June 8, 1982, the Merchants Bank, a secured creditor, moved to convert the proceeding to one under Chapter 7, pursuant to Section 1112(b)(1) of the Bankruptcy Code. On July 14, 1982, there being no adverse interest to such conversion and the Debtor having filed a Consent on July 9, 1982, it was so ordered that the case be converted from Chapter 11 to Chapter 7.

On August 31, 1982, the City of Winooski proceeded to file a notice of personal property tax lien. The City asserted its lien against the Debtor's inventory, equipment, and general personal property as to secure payment of the personal property taxes levied for 1979, 1980, and 1981. The amount of the lien being asserted was as follows:

1979

| | |
|---|---|
| Personal property tax | $6465.41 |
| Interest to 11/15/82 | 1939.62 |
| Penalty | 517.23 |
| Total | $8922.26 |

1980

| | |
|---|---|
| Personal property tax | $22453.44 |
| Interest to 11/15/82 | 5052.02 |
| Penalty | 1796.28 |
| Total | $29301.74 |

1981

| | |
|---|---|
| Personal property tax | $19706.52 |
| Interest to 11/15/82 | 2069.18 |
| Penalty | 1576.52 |
| Total | $23352.22 |

On October 7, 1982, the City of Winooski filed its instant petition for determination of tax liability. The City of Winooski also set forth the following delinquencies at the hearing on November 15, 1982:

1981

| | |
|---|---|
| Real Estate tax | $49.76 |
| Interest to 11/15/82 | 5.22 |
| Penalty | 3.98 |
| Total | $58.96 |

1981

| | |
|---|---|
| Water reflo | $3783.72 |
| Interest to 11/15/82 | 460.80 |
| Penalty | 574.68 |
| Total | $4819.20 |

1982

| | |
|---|---|
| Water reflo | $5460.25 |
| Interest to 11/15/82 | 383.86 |
| Penalty | 436.82 |
| Total | $6280.93 |

It is at this posture the case currently stands.

## CONCLUSIONS OF LAW

I. WHETHER THE TAX LIABILITY OF NEW ENGLAND CARPET COMPANY, INC., THE DEBTOR, AS DETERMINED BY THE CITY OF WINOOSKI IS PROPER?

The City of Winooski has requested this Court to determine the tax liability of the Debtor pursuant to Section 505(a)(1) of the Bankruptcy Code. As stated in 11 U.S.C. § 505(a)(1):

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal or competent jurisdiction.

In the instant case, there had been no dispute raised by the Debtor, the Trustee, nor any of the parties of interest, as to the amount of the tax assessments for years 1979, 1980, and 1981. Further, there was no evidence submitted by the parties which would draw the assessments, as made by the City of Winooski, into question. However the Court after closely scrutinizing the tax assessments finds that certain issues arise as to the penalties and the water rents. As for the real estate tax and the personal property tax assessments, the Court in view of the Debtor's admission of liability in its schedules, finds that further inquiry and determination of those taxes is unnecessary.

A. WHETHER THE PENALTIES ASSESSED BY THE CITY OF WINOOSKI AGAINST NEW ENGLAND CARPET COMPANY, INC., FOR DELINQUENT PERSONAL PROPERTY, REAL ESTATE, AND WATER RENTS ARE ENTITLED PRIORITY UNDER SECTION 507(a)(6) OF THE CODE?

Section 507(a)(6)(G) addresses the issue of the types of penalties entitled to priority under the Code, when such penalties are related to a tax. As stated in 11 U.S.C. § 507(a)(6)(G):

(a) The following expense and claims have priority in the following order:

(6) Sixth, allowed unsecured claims of governmental units to the extent that such claims are for—

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

There is no doubt that the penalties assessed by the City of Winooski upon New England Carpet Company, Inc., are related to claims of a kind set forth in Section 507(a)(6)(B). (See *In re Adams,* 17 B.R. 742 (Bkrtcy.E.D.Pa.1982), for the treatment of water and sewer rents as Section 507(a)(6)(B) property taxes). However, it is questionable that a compensatory role should be assigned to these penalties in light of the fact that interest is additionally charged. The pecuniary loss to the City of Winooski is the loss of the use of the tax money. This is precisely the kind of loss

that the interest is supposed to compensate. Therefore, without the submission of evidence by the City of Winooski to show that the penalties are not punitive, the penalties are not entitled to priority.

However, the lack of priority does not alter the propriety of the penalty. As such, the Court has determined pursuant to Section 505(a)(1) that the penalties as assessed by the City of Winooski are assessed in the proper amounts.

### B. WHETHER THE WATER RENT TAX DETERMINED BY THE CITY OF WINOOSKI IS A TAX LIABILITY OF THE DEBTOR, NEW ENGLAND CARPET COMPANY, INC.?

■ The City of Winooski has asserted that the 1981 and 1982 water rents are the tax liabilities of the Debtor. The Court immediately notes that there has been no evidence submitted besides the Debtor's schedules, to indicate that the Debtor is the owner of such real property upon which a lien for such a tax may be imposed under 24 V.S.A. § 3306. As such, the claim shall be presumed to be unsecured.

■ Section 3306 of Title 24 of the Vermont Statutes Annotated states:

The owner or occupant of any tenement, house or building, who takes the water of such municipal corporation shall be liable for the rent or price of same...

The nature of these water rents are in the form of a property tax, and therefore, shall be treated in accordance with Section 507(a)(6)(B) of the Code. (*In re Adams,* Id.)

In the instant case, there is no question that the Debtor occupied the premises, and obtained water from the City of Winooski for its business. As such, the water rent is clearly the liability of the Debtor. However, the City has failed to set forth which portion of the 1981 tax was pre-petition and which was post. This failure, although, does not prevent the Court from now determining the amount of the tax, and its entitlement to priority.

■ Section 502(i) of the Code states:

(i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(6) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same *as if such claim had arisen before the date of the filing of the petition.* (emphasis supplied).

In view of Section 502(i), the pre-petition/post-petition distinction becomes almost irrelevant when the claim is in the nature of a Section 507(a)(6) tax. As applied to the instant case, the City of Winooski's claim as a tax entitled to priority, should be given priority in its entirety regardless of whether the claim arose before or after the petition.

This interpretation of Section 502(i), as read with the other sections of the Code, is noted in *Collier on Bankruptcy,* ¶ 502.09, 502–93, footnote 1 (15th ed. 1981). As stated therein:

... It should not be overlooked and bears repeating, that whether or not a claim is entitled priority under section 507 is a vastly different conceptual proposition than in section 503 dealing with administrative expenses arising following the filing of the petition. To the extent a claim is allowed to have administrative expense status under section 503, it is given priority under section 507(a)(1), which provides that administrative expenses allowed under section 503(b) among other, are entitled to that first priority. To the extent, therefore, that section 502(i) deals with post-petition taxes, it does not deny to such taxes the priority status accorded them by section 507(a)(6). All section 502(i) really does is make plain that a tax claim entitled to priority under section 507(a)(6), even though it arises after the commencement of the case and, therefore, might logically be entitled to administrative status under section 503(b) and, therefore, a first priority under section 507(a)(1), is allowed to the extent allowable "as if such claim had arisen before the date of the filing of the petition." The allocation of such status as a pre-petition claim denies administra-

tive status. To that extent, therefore, the tax claim is not given a first priority as an administrative claim under section 507(a)(1), but retains its sixth priority status under section 507(a)(6). It bears repeating that save for administrative expenses under section 503, all claims asserted against the assets of a debtor for purposes of distribution are deemed to be claims existing at the time of the filing of the petition.

This Court will follow the Congressional scheme which prevents a section 507(a)(6) tax from being treated as an administrative expense under Section 503. Instantly, that means the City of Winooski's water tax claims, although arising after the petition, will be treated as arising before the filing. However, the Court will note that this legislative scheme has been subject to criticism. See *Collier on Bankruptcy,* ¶ 503.-04[1][b] at 503–21, 503–22 (15th Ed. 1981).

Therefore, the claim of the City of Winooski is determined to be proper in the amount the City has set forth, and such claim for water rents shall be treated as a Section 507(a)(6) priority.

## II. WHETHER THE TAX LIABILITY OF NEW ENGLAND CARPET COMPANY, INC., THE DEBTOR, TO THE CITY OF WINOOSKI FOR PERSONAL PROPERTY TAXES FOR 1979, 1980, AND 1981 IS A SECURED CLAIM?

The City of Winooski, as well as, the parties in opposition, have specifically addressed the arguments and memoranda toward the issue of whether the tax liability to the City of Winooski is a secured claim.

The City of Winooski has asserted that Section 546(b) of the Code allows the City to perfect its tax lien subsequent to the filing of the petition. The City further asserts that Section 362(b)(3) excepts the City from the automatic stay provisions.

In contrast, the New England Merchants Bank suggests that 11 U.S.C. § 545, "as limited by Section 546(b), makes a statutory lien subject to attack if it is not sufficiently perfected or enforceable so as to defeat the rights of a hypothetical bona fide purchaser

of the subject property on the date of the filing of the petition." New England Merchants Bank further asserts while it is true that 32 V.S.A. § 5072 is a generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection; the statute, on its face, provides that the lien acquired "shall not be enforceable against a bona fide owner who has purchased such property for value without actual notice of such lien." Thus, the instant tax lien as claimed by Winooski and established pursuant to section 5072 is avoidable because, such a lien is not enforceable against a hypothetical bona fide purchaser that purchases the subject property on the date of the filing of the petition.

In order for the Court to make its determination of the issues as addressed by the parties, a discussion of the applicable sections of the Bankruptcy Code, as well as, Section 5071 and 5072 of the Vermont Statutes Annotated is necessary.

The Trustee is provided with the authority and power to avoid a statutory lien pursuant to 11 U.S.C. § 545. Section 545(2) states in part:

> The Trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> > (2) is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists:

However, the power as granted in Section 545, is subject to the limitations set forth in 11 U.S.C. § 546. As stated in Section 546(b):

> (b) The rights and powers of the trustee under section 544, 545, or 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

\* \* \* \* \* \*

As such, if Vermont law authorizes the subsequent perfection of this particular statutory lien of August 31, 1982, and authorizes the lien to relate back in time so as to have priority in law over any other lien having priority in time, then Section 546(b) becomes effective thereby defeating the trustee's avoiding powers under Section 545(2). In that case, the City of Winooski's lien may not be avoided and 11 U.S.C. § 362(b)(3) of the Bankruptcy Code would allow such perfection even after the filing of the petition. As set forth in Section 362:

> (b) The filing of a petition under 301, 302, or 303 of this title does not operate as a stay—
>
> (3) under subsection (a) of this section, of any *act to perfect an interest* in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title; (emphasis supplied)

However, it is through a strict construction of the Vermont law and the specific language of Section 362 of the Code that an infirmity in the City of Winooski's argument becomes apparent.

The initial and most significant infirmity arises from Section 5072 of Title 32, Chapter 133 of the Vermont Statutes Annotated. As stated in Section 5072:

> *The filing of such notice shall thereby create and constitute a tax lien on such personal property* therein described and shall have priority in law over any other lien having priority in time. (emphasis supplied).

As emphasized above, the City of Winooski's underlying interest or rights in the taxpayer's personal property, as well as, their actual lien, would not have been created until the notice was filed. In the instant case, the lien would not have been created until August 31, 1982, long after the filing of the petition.

■ Section 362(a)(4) of the Code specifically stays "*any act to create*, perfect, or enforce any lien against property of the estate..." (emphasis supplied), upon the filing of the petition. In contrast, Section 362(b)(3) specifically excepted "any *act to perfect* an interest in property to the extent

that the trustee's rights and powers are subject to such perfection under section 546(b)..." (emphasis supplied). While there should be no doubt that Section 362(b)(3) excepts the *perfection* of certain liens, it is manifestly as clear that *creation,* as opposed to *perfection,* is not excepted.

■ It is through the comparison of subsection (a), paragraph (4) and subsection (b), paragraph (3) of Section 362 of the Code, that the Court concludes that a creditor's underlying interest must be created prior to the petition, and that the interest need only be perfected after the petition date, so as to be excepted from the automatic stay. In the instant case, Winooski failed to have such an interest prior to the petition, and therefore, it could not be excepted from the stay. As such, the City of Winooski's claim for personal property taxes for 1979, 1980, and 1981 is unsecured.

The Court finds further substantiation for its distinction in Section 546(b), where the Code makes specific reference to perfection, and not creation. As stated in Section 546(b). "The rights and powers of the trustee ... are subject to any generally applicable law that permits *perfection* of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." It is by the Code's explicit language that leads the Court to the conclusion that the perfection of an interest, and the creation of an interest are not congruent as applied to the automatic stay. Thus, this Court should not treat them as the same unless the Code specifically provides for such treatment.

It is also noted that the Vermont statute has been found to create no underlying lien or interest prior to the filing of notice. As stated in *Town of Bristol v. United States,* 315 F.Supp. 908, 911 (D.Vt.1970):

> As to personal property taxes here involved, they stand on a different footing, since there is no Vermont personal property statute similar to 32 V.S.A. § 3652 on real estate, just referred to. The complaint alleges (Paragraph 10) that the tax collector of Bristol "filed a tax lien covering personal property" here involved on

October 1, 1969, but it does not allege, nor is there any evidence before the Court or representation made by the Town that it complied with the notice requirements of 32 V.S.A. § 5071 to perfect its lien as against the Small Business Administration. This being so, the sale by the Small Business Administration consumated on November 17, 1969, was free and clear of any lien or claim by the Town.

The Court's opinion as set forth makes it unnecessary to consider the additional arguments of the parties. However, the Court notes that it finds merit in the argument that the personal property tax lien can only be filed to secure the payment of the taxes voted by the Town at its previous meeting, within the taxable year of that meeting. To conclude otherwise would be to afford the local authorities an opportunity to attempt disguised priorities for older delinquent taxes in the form of liens that apply only in bankruptcy cases.

III. WHETHER THE TAX LIABILITY OF NEW ENGLAND CARPET COMPANY, INC., THE DEBTOR, TO THE CITY OF WINOOSKI FOR PERSONAL PROPERTY TAXES FOR 1979, 1980 AND 1981 IS ENTITLED TO PRIORITY UNDER SECTION 507 OF THE CODE?

■ In determining whether a tax claim is entitled to priority reference must be made to Section 507 of the Code. As stated in Section 507(a)(6), and as generally applicable to most tax claims:

(a) The following expenses and claims have priority in the following order:

\*   \*   \*   \*   \*   \*

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—

(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

In applying Section 507(a)(6)(B), a review must be made of when each tax was assessed; and also, when it was last payable without penalty. These dates must be then compared with the date of the petition to determine whether priority shall be afforded.

In the instant case, the City of Winooski assessed the 1979 personal property tax on April 1, 1979. This tax was payable by installments becoming last payable without penalty on August 15, 1979, November 15, 1979, February 15, 1980 and May 15, 1980. In that each of these dates exceeded the period of one year before the date of the filing of the petition, the 1979 tax is not entitled to priority. Correspondingly, had this been a case in which a discharge was granted, the 1979 tax would be discharged. 11 U.S.C. § 523(a)(1)(A).

The 1980 personal property tax was also assessed on April 1st, and each of the installment dates were in similar months in 1980 and 1981. Since each of the dates that the tax was last payable without penalty are within the one year period before the date of the petition, (i.e. June 30, 1980 to June 30, 1981) the entire personal property tax for 1980 is entitled to priority. The 1980 tax was in the amount of $22,453.44.

In 1981, the tax was assessed before the petition. However, the date that each of the installments was last payable without penalty was subsequent to the petition. It is this Court's opinion that the fact that the installments were last payable without penalty after the petition does not effect their entitlement to priority under Section 507(a)(6)(B). As such, the entire 1981 personal property tax will be entitled to the sixth priority. A brief analysis of the statute and the legislative history is again necessary.

Initially, Section 507(a)(6)(B) requires that the tax be assessed before the commencement of the case. In the instant case, the 1981 property tax was assessed on April 1, 1981, approximately 3 months before the petition date of June 30, 1981. As such, the first element is clearly satisfied. The second element of Section 507(a)(6)(B) requires the tax be last payable without penalty after one year before the date of the filing of the petition. In the instant case, the priority "cut-off" date was June 30,

1980. Each of the last payable dates for the tax installments was after that date, without regard being given to the petition date. These payments were due on August 15, 1981, November 15, 1981, February 15, 1982, and May 15, 1982. To allow the date of the petition to be treated as a second "cut-off" date would create an anomaly.

This anomaly would be especially apparent in the instant case since the 1980 taxes would be entitled to priority. However, the 1981 taxes which would be the least "stale", and which the taxing authority had the least amount of time to collect, would not. Additionally, the most recent taxes would be subject to discharge, while the older taxes would not. 11 U.S.C. § 523(a)(1)(A). This result would be clearly contrary to the legislative history and intent found in the House Report 595, 95th Cong. 1st Sess. 189 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6150. As stated therein:

## D. PRIORITY AND DISCHARGE-ABILITY OF TAXES

Under present bankruptcy law, taxes that become legally due and owing within three years before the date of bankruptcy are granted priority in payment, and are made nondischargeable. The priority and discharge provisions apply equally well to Federal, State and local taxes. A taxing authority is given preferred treatment because it is an involuntary creditor of the debtor. It cannot choose its debtors, nor can it take security in advance of the time that taxes become due. The Bankruptcy Act gives the taxing authority three years to pursue delinquent debtors and obtain secured status. If a debtor filed bankruptcy before that three-year period has run, the taxing authority is given a priority in order to compensate for its temporarily disadvantaged position.

There is an additional reason for the priority. Because it takes a taxing authority time to locate and pursue delinquent tax debtors, taxes are made nondischargeable if they become legally due and owing within three years before bankruptcy. An open-ended dischargeability policy would provide an opportunity for

tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due. The priority is tied to this nondischargeability provision, in order to aid the debtor's fresh start. By granting the nondischargeable tax a priority, more of it will be paid in the bankruptcy case leaving less of a debt for the debtor after the case.

On the basis of the foregoing, it is the opinion of this Court that the 1981 personal property tax should be treated as a tax priority pursuant to 11 U.S.C. § 507(a)(6)(B). This treatment is also consistent with the treatment of post-petition tax claims as set forth in 11 U.S.C. § 502(i), as previously discussed in this opinion.

## ORDER

Now, therefore, on the foregoing:

IT IS ORDERED:

1. That the personal property taxes, and penalties for the tax periods of 1979, 1980, and 1981 are proper, and are determined to be in the correct amounts as assessed against the Debtor by the City of Winooski.

2. That the real estate tax and the water reflo tax, with the relative penalties, are proper, and are determined to be in correct amounts as assessed against the Debtor by the City of Winooski.

3. That the penalties assessed against the Debtor by the City of Winooski for the following taxes are NONPRIORITY, GENERAL UNSECURED CLAIMS; 1979 Personal Property tax penalty, $517.23; 1980 Personal Property tax penalty, $1796.28; 1981 Personal Property tax penalty, $1576.52; 1981 Real Estate tax penalty, $3.98; 1981 Water Reflo tax penalty, $574.68; and, 1981 Water Reflo tax penalty, $436.82.

4. That the Water Reflo taxes for the periods of 1981 and 1982, in the respective amounts of $3783.72 and $5460.25, are UNSECURED PRIORITY CLAIMS under 11 U.S.C. § 507(a)(6)(B).

5. That the Personal Property tax claims of the City of Winooski for the tax

periods of 1979, 1980 and 1981 are UNSE-CURED.

6. That the 1979 Personal Property tax assessed against the Debtor by the City of Winooski is a NONPRIORITY, GENERAL UNSECURED CLAIM.

7. That the 1980 and 1981 Personal Property tax claims of the City of Winooski are UNSECURED PRIORITY CLAIMS under 11 U.S.C. § 507(a)(6)(B) in the respective amounts of $22,453.44 and $19,706.52.